**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN DOE 1,** | **CIVIL ACTION** |
| **JOHN DOE 2,** | |
| **JOHN DOE 3, and** | |
| **JANE DOE 1, Individually and on behalf of** | |
| **all others similarly situated,** | |
| **Plaintiffs,** | **NO.  20-1947** |
| **v.** | |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**DuBOIS, J.**                                            **February 18, 2021**

**M E M O R A N D U M**

### I.     INTRODUCTION

In this putative class action, plaintiffs John Doe 1, John Doe 2, John Doe 3 and Jane

Doe 1 claim, on behalf of themselves and all similarly situated individuals, that their employer,

the United States, violated the Federal Employees' Retirement Systems Act of 1986 ("FERSA"),

5 U.S.C. §§ 8351 and 8401 *et seq*., by failing to adequately compensate them for lost earnings

during the federal government shutdown from December 22, 2018 to January 25, 2019 (the

"Shutdown").  Specifically, plaintiffs claim that when they received backpay on January 31,

2019, they were not compensated for the Government's failure to make timely contributions to

the Thrift Savings Plan ("TSP")—a defined contribution plan created by FERSA, which

appreciated in value during the Shutdown.  Presently before the Court are the Government's

Motion to Dismiss and Plaintiffs' Motion to Proceed Anonymously.  For the reasons set forth

below, the Motion to Dismiss is denied and the Motion to Proceed Anonymously is granted

without prejudice to the right of the parties to seek modification of the accompanying order at a

later stage of the proceedings.

## II.     BACKGROUND

The facts set forth in the Complaint, accepted as true for purposes of addressing the Government's Motion to Dismiss,[1] may be summarized as follows:  "Congress passed FERSA in an effort to offer federal employees a savings and tax benefit similar to what many private sector employers offered their employees under 401(k) plans.  Specifically, FERSA created the Thrift Savings Plan ('TSP'), a defined contribution plan for federal employees."  Compl. ¶ 4.  "Since its creation over thirty years ago, the TSP has become the largest retirement plan in the country, managing more than $500 billion in retirement assets.  The assets of the TSP are held in trust in individual employee accounts within the Thrift Savings Fund."  *Id.* ¶ 5.

"Eligible federal employees are automatically entitled to receive a contribution to their TSP accounts by their employing federal agency equal to 1% of their salary.  5 U.S.C. § 8432(c)(1)."  ("automatic contributions")  *Id.* ¶ 6.  Federal employees may also make "elective contributions to their TSP accounts which are deducted from their paychecks.  5 U.S.C. § 8351(a)(1).  For all elective deductions up to 5% of the employee's salary, the United States 'matches' 50% to 100% of the contribution.  5 U.S.C. § 8432(c)(2)"  ("matching contributions").  *Id.*  Under "FERSA, Congress required that employing agencies (*i.e.*, the United States) make all TSP contributions for the benefit of its employees 'no later than 12 days after the end of each . . . pay period[.]'  5. U.S.C. § 8432(c)."  *Id.* ¶ 8.  "Pay period" refers to the bi-weekly compensation schedule for federal employees.  *Id.* ¶ 7.

---

[1]     In addressing the Motion to Proceed Anonymously, the Court, in its discretion, may consider all submissions of record.  *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir.), *order clarified*, 543 F.3d 178 (3d Cir. 2008) (affirming the district court's grant of a motion to proceed anonymously "[a]fter a careful review of all the circumstances of th[e] case.").  In addition to the Complaint, the Court considers the parties' briefs and plaintiffs' declarations, filed under seal, in deciding that Motion.

Plaintiffs are Investigative Specialists for the Federal Bureau of Investigations ("FBI") who worked without paychecks or TSP contributions during the Shutdown from December 22, 2018 to January 25, 2019.  *Id.* ¶¶ 9, 18-21.  "During the thirty-four day Shutdown the value of TSP investment funds increased considerably, across the board.  In particular, the most popular TSP investment funds increased over 10% in the short period of time."  *Id.* ¶ 10.  "Upon funding of the federal agencies, [p]laintiffs and all TSP participants were entitled to receive their backpay and be made whole."  *Id.* ¶ 11.  Plaintiffs allege that this backpay should have included "their salary ***plus*** lost TSP earnings as a result of not receiving their contributions in accordance with Section 8432(c) of FERSA."  *Id.* (emphasis original).  However, "when they received their 'backpay' on January 31, 2019, [p]laintiffs and other Class members were not compensated for the United States' failure to make timely TSP contributions."  *Id.*

"[A] material portion of the overall market increase during the Shutdown . . . occurred in the twenty (20) day period between when Plaintiffs expected to receive their first TSP contributions (January 11, 2019) and the date on which the 'backpay' contributions were made (January 31, 2019)."  *Id.* ¶ 42.  "Accordingly, when [p]laintiffs received their backpay TSP contributions . . . , they were forced to acquire the TSP funds at prices up to 4.68% more expensive than what they should have paid for the same Funds on January 11, 2019."  *Id.*  ¶ 43.  "This seemingly small price inflation will have a material effect on the overall funds available to each TSP participant upon retirement due to the compounding effect of [d]efendant's violations."  *Id.* ¶ 44.  "Plaintiffs estimate that the Class suffered millions in lost earnings as a result of the United States' untimely TSP contributions in violation [of Section 8432(c)] of FERSA."  *Id.* ¶ 45.

In the Complaint, plaintiffs assert one claim: violation of 5 U.S.C. § 8432(c) based on the Government's failure to make TSP contributions for the December 23, 2018 through January 5, 2019 pay period within 12 days of the end of the period—by January 17, 2019.  *Id.* ¶ 48. Plaintiffs seek an award for lost earnings, "including lost earnings for future gains not realized, and pre-judgment and post-judgment interest."  Prayer for Relief, C.

The Government filed a Motion to Dismiss on August 21, 2020 (Document No. 8). Plaintiffs responded on October 5, 2020 (Document No. 11).  The Government replied on October 22, 2020 (Document No. 15).

On November 17, 2020, plaintiffs filed a Motion to Proceed Anonymously (Document No. 18).  The Government responded on December 8, 2020 (Document No. 21).  Plaintiffs replied on January 13, 2021 (Document No. 23).

The Motions are thus ripe for decision.

## III.   LEGAL STANDARDS

### A.  Motion to Proceed Anonymously

Federal Rule of Civil Procedure 10(a) requires plaintiffs to identify the parties by their names in the complaint.  Fed. R. Civ. P. 10(a); *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). "A plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.'"  *Megless*, 654 F.3d at 408 (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir.2000)).  However, in exceptional cases, a court may allow a party to proceed anonymously.  *See C.A.R.S.*, 527 F.3d at 371 n. 2.

The Third Circuit has set forth a non-exhaustive list of factors that courts should balance in determining whether to allow a party to proceed anonymously.  Factors favoring anonymity include:

(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Megless*, 654 F.3d at 409 (quoting *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467-68 (E.D. Pa. 1997)).

Factors weighing against anonymity include:

(1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id*. Whether exceptional circumstances warranting anonymity exist is a question within the discretion of the district court. *See C.A.R.S.*, 527 F.3d at 371 n.2 (citing *Doe v. Frank,* 951 F.2d 320, 323 (11th Cir.1992); *Lindsey v. Dayton-Hudson Corp.,* 592 F.2d 1118, 1125 (10th Cir.), *cert. denied,* 444 U.S. 856 (1979)).

### B. Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter" of a case. Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of establishing subject matter jurisdiction. *See Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Without jurisdiction the court cannot proceed

at all in any case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).

In evaluating a Rule 12(b)(1) motion, the Court must first determine whether the motion "presents a 'facial' attack or a 'factual' attack." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Id.* When ruling on a facial attack, the Court "considers only the complaint, viewing it in the light most favorable to the plaintiff." *Id.* By contrast, a factual attack is an argument that challenges the "factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). When ruling on a factual attack, the Court weighs the evidence and must satisfy itself as to the existence of its authority to hear the case. *Id.*

The Government styles its 12(b)(1) argument as a facial attack, and the Court agrees. Thus, in ruling on this argument, the Court considers only allegations in plaintiffs' Complaint and related documents.

### C.  Rule 12(b)(6) Standard

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. CV 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility

of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680.

## IV.    DISCUSSION

### A.  Motion to Proceed Anonymously

Plaintiffs work covertly as Investigative Specialists and "are not permitted to publicly affiliate with the FBI." Compl. ¶ 18 n.1. They filed under seal a Motion to Proceed Anonymously and attached declarations in which they disclosed their identities to the Court and the Government. In response, the Government states that it "does not oppose [p]laintiffs' [M]otion," but requests that the Court impose "certain limitations and caveats" in granting the Motion. Resp. Mot. Proc. Anon., 1. Specifically, the Government requests that (1) the Court grant the Motion without prejudice to any party's right to later seek modification; (2) discovery is conducted using plaintiffs' real names; and (3) any potential trial is conducted using plaintiffs' real names. *Id.*

District courts have "an independent duty to determine whether 'exceptional circumstances' warrant a departure from the normal method of proceeding" in federal litigation. *Freedom from Religion Found., Inc. v. New Kensington-Arnold Sch. Dist.*, No. 2:12-CV-1319, 2012 WL 6629643, at *3 (W.D. Pa. Dec. 19, 2012) (citing *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004)). Accordingly, the Court examines whether plaintiffs present an exceptional case warranting anonymity and evaluates each of the Government's proposed limitations in turn.

### i.    *Factors Supporting Anonymity*

Five of the six factors that counsel in favor of anonymity support plaintiffs' Motion.[2]  As an initial matter, factors one, two and three—"the extent to which the identity of the litigant has been kept confidential," "the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases," and "the magnitude of the public interest in maintaining the confidentiality of the litigant's identity"—clearly support anonymity.  *Megless*, 654 F.3d at 409.  Plaintiffs assert that "it is uncontested that plaintiffs' identities are non-public and that disclosure would threaten their safety and the integrity of multiple FBI surveillance operations."  Reply Mot. Proc. Anon., 5.  Additionally, plaintiffs contend that "disclosing their identities as Investigative Specialists would impose undue safety risks for themselves and their families and would threaten the vital counterterrorism and counterintelligence work they do."  *Id.*, 2.  Further, plaintiffs state that the magnitude of the public interest in maintaining their confidentiality is great, given that plaintiffs "are often critical components of national security and investigative operations."  *Id.*, 1 (citations omitted).  These allegations, which are verified in plaintiffs' declarations filed under seal, also support the conclusion that factor six, —"whether the party seeking to sue pseudonymously has illegitimate ulterior motives"—weighs in favor of anonymity.  *Megless*, 654 F.3d at 409.  The Court concludes that plaintiffs' verification of their roles as Investigative Specialists provides a legitimate basis for their Motion.

In *Long v. Office of Personnel Management*, the United States District Court for the Northern District of New York deemed the public interest in the identities of FBI employees "virtually nonexistent" when compared to the employees' privacy and safety interests.  No. 5:05-

---

[2]    Factor five—"the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified"—does not apply to this case.  *Megless*, 654 F.3d at 409.

CV-1522, 2007 WL 2903924, at *10 (N.D.N.Y. Sept. 30, 2007), *aff'd*, 692 F.3d 185 (2d Cir. 2012). Relying on the United States Office of Personnel Management's assessment that "all FBI personnel and their families [are] targets for dangerous organizations and individuals, including domestic and international terrorists, foreign intelligence agencies, organized criminal groups, and other violent and sophisticated criminals," the court determined that concealment of the plaintiffs' identities was essential to the safety of the plaintiffs and the public. *Id.* (emphasis omitted). In this case, the Government does not dispute that the confidentiality of plaintiffs' identities is essential to their work, safety, and the national security interests of the United States. Thus, the Court concludes that factors one, two, three and six counsel in favor of plaintiffs' Motion.

Factor four—"whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities"—also supports anonymity. *Megless*, 654 F.3d at 409. As set forth in the Court's ruling on the Government's Motion to Dismiss, Part IV.B, *infra*, plaintiffs' claim turns almost entirely on novel questions of law and statutory interpretation. Thus, plaintiffs' identities are not essential, or even particularly relevant, to the resolution of the issues presented in this case.

The Government argues, however, that the disclosure of plaintiffs' identities will be critical for purposes of class certification, as putative class members must "assess whether the representatives adequately represent them and whether they wish to participate in the action." Resp. Mot. Proc. Anon., 3. The Court agrees that the fact-sensitive questions of adequacy and typicality, for example, may require plaintiffs to disclose more information about their identities as putative class members. However, the Court need not address this issue at this stage of the litigation. As discussed in Part IV.A.iii, *infra*, the parties may seek modification of the

accompanying order if necessary in connection with class certification.  Thus, the Court determines that the issue of class certification does not affect the predominantly legal nature of plaintiffs' claims.  Factor four, therefore, also supports anonymity.

     *ii.*   *Factors Weighing Against Anonymity*

    The Government argues that, of the three factors that counsel against anonymity, the second—the public interest in the subject matter of the litigation—weighs against anonymity. The Court determines that the other two factors are not applicable to this case and thus evaluates only the public interest factor.

    The Government contends that the public interest in the litigation's subject matter is "heightened because the defendant is the federal government and the source of alleged damages is the public fisc."  Resp. Mot. Proc. Anon., 4.  In their Reply, however, plaintiffs point out that this public interest is not outweighed by the national security interests at stake.  Supp. Mot. Proc. Anon., 4.  They also cite a number of other employment suits initiated by FBI employees, who were allowed to proceed anonymously for similar reasons.  *Id*.  The Court agrees with plaintiffs that the public interest in the nature of this case does not overcome the competing public interest in maintaining the confidentiality of plaintiffs' identities, or any of the other factors discussed above, which counsel in favor of anonymity.  Accordingly, the Court grants plaintiffs' Motion to Proceed Anonymously, subject to conditions discussed below.

     *iii.*   *Proposed Limitations*

    The Government proposes three limitations to any order granting plaintiffs' Motion to Proceed Anonymously.  First, the Government requests that any order granting the Motion be without prejudice to the right of the parties to seek modification of the order at a later stage of the proceedings, which would amount to a conditional grant of anonymity.  Plaintiffs do not

oppose this condition.  Caselaw in this District supports such a limitation.  *See, e.g.*, *Doe v. Brennan*, No. 5:19-CV-5885, 2020 WL 1983873 (E.D. Pa. Apr. 27, 2020) (granting motion to proceed anonymously without prejudice); *Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. 2d 690, 701 (E.D. Pa. 2012) ("The Court is always open to consider modification of a protective order.").  Accordingly, the Motion is granted without prejudice to the right of the parties to seek modification of the order at a later stage of the proceedings.

Second, the Government requests that any non-public discovery be conducted using plaintiffs' real names.  Plaintiffs state that they "are willing to participate in discovery using their real names so long as their identities remain anonymous to the public."  Supp. Mot. Proc. Anon., 6.  In view of this agreement, the Court grants the Motion on condition that plaintiffs' real names may be used, as necessary, in non-public discovery.  The parties shall negotiate any implementation of this condition in good faith.

Third, the Government argues that any potential trial should be conducted using plaintiffs' real names on the ground that "there is a strong presumption against confidentiality in court proceedings."  Resp. Mot. Proc. Anon., 2 (citing *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 670-73 (3d Cir. 2019)).  In response, plaintiffs state that "any ruling governing trial procedures and the disclosure of [p]laintiffs' identities at trial would be premature at this juncture."  Supp. Mot. Proc. Anon., 6.  The Court agrees with plaintiffs on this issue.  In light of the Court's decision to grant the Motion without prejudice to the right of the parties to seek modification of the order at a later stage of the proceedings, the Court declines to rule on the Government's request with respect to trial procedures at this point in the litigation.  In the event that the case proceeds to trial and the Government deems public disclosure of

plaintiffs' identities necessary, the Government may seek modification of the accompanying order.

For the foregoing reasons, Plaintiffs' Motion to Proceed Anonymously is granted without prejudice to the right of the parties to seek modification of the order at a later stage of the proceedings.

### B.  Motion to Dismiss—Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

The Government moves to dismiss plaintiffs' Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), failure to state a claim under Fed. R. Civ. P. 12(b)(6), and failure to exhaust administrative remedies provided by FERSA regulations.  Specifically, the Government argues that the Court lacks subject matter jurisdiction because "FERSA does not waive sovereign immunity to permit the specific claim that [p]laintiffs purport to bring against the United States."[3]  Mot. Dismiss, 8.  Additionally, the Government contends that plaintiffs fail to state a cognizable claim under FERSA on three grounds: (1) the applicable provisions, "5 U.S.C. §§ 8432(c)(1)(A) and 8432(c)(2)(A) do not confer an enforceable individual 'right' that [p]laintiffs may vindicate via a suit under 5 U.S.C. § 8477(3)(C)(i)" *id.*, 13; (2) plaintiffs have not sufficiently alleged a claim for "'lost earnings' on TSP contributions permitted under 5 U.S.C. § 8432a and its implementing regulations" *id.*, 11; and (3) plaintiffs have not averred "that they were entitled to TSP contributions during the government shutdown despite the lack of authorized appropriations to fund them."  *Id.*, 15.  Finally, the Government asserts that plaintiffs' claim should be dismissed because they have "not alleged exhaustion of FERSA's mandatory

---

[3]     The Government also contends that the Court lacks subject matter jurisdiction over plaintiffs' claim because "[p]laintiffs may not proceed anonymously."  Mot. Dismiss, 7.  This argument is rendered moot by the Court's decision to grant plaintiffs' Motion to Proceed Anonymously.

administrative remedies prior to filing suit." *Id.*, 16.  The Court addresses each of these arguments in turn.

> i.  *FERSA's Sovereign Immunity Waiver*

5 U.S.C. § 8477(e) provides federal district courts exclusive subject matter jurisdiction over several types of FERSA claims.  Plaintiffs assert that their claim arises under § 8477(e)(3)(C)(i), "which provides that a civil action may be brought: 'by any participant or beneficiary—(i) to recover benefits of such participant or beneficiary under the provisions of subchapter III of this chapter, to enforce any right of such participant or beneficiary under such provisions, or to clarify any such right to future benefits under such provisions . . . .'"  Compl. ¶ 51.  In its Motion, the Government contends that plaintiffs claim does not arise under this subsection on the ground that they "identify no provisions of subchapter III, 5 U.S.C. §§ 8431-8440f, that expressly provide TSP participants with a 'benefit' of, or 'right' to, market gains or appreciation in TSP share price."  Mot. Dismiss., 10.  In response, plaintiffs claim that, pursuant to the § 8477(e)(3)(C)(i) sovereign immunity waiver, plaintiffs may recover the benefit of timely contributions, conferred upon them by §§ 8432(c)(1)(A) and 8432(c)(2)(A).  Compl. ¶ 52; Opp. Mot. Dismiss, 12.

5 U.S.C. § 8432 (c)(1)(A) states,

> At the time prescribed by the Executive Director, but no later than 12 days after the end of the pay period that includes the first date on which an employee or Member may make contributions under subsection (a) (without regard to whether the employee or Member has elected to make such contributions during such pay period), and within such time as the Executive Director may prescribe with respect to succeeding pay periods (but no later than 12 days after the end of each such pay period), the employing agency shall contribute to the Thrift Savings Fund for the benefit of such employee or Member the amount equal to 1 percent of the basic pay of such employee or Member for such pay period.
>
> …

13

> (2)(A) In addition to contributions made under paragraph (1), the employing agency of an employee or Member who contributes to the Thrift Savings Fund under subsection (a) for any pay period shall make a contribution to the Thrift Savings Fund for the benefit of such employee or Member. The employing agency's contribution shall be made within such time as the Executive Director may prescribe, but no later than 12 days after the end of each such pay period.[4]

Accordingly, plaintiffs assert that they have identified an actionable benefit of TSP contributions "no later than 12 days after the end of each such pay period" under subchapter III.

The parties do not cite, and a thorough search does not reveal, any cases addressing the specific question of whether § 8432(c) creates a "benefit" of or "right" to timely TSP distributions. The Court thus addresses this issue as a matter of first impression.

The Government does not dispute that "agency automatic and matching contributions" provided by §§ 8432(c)(1)(A) and 8432(c)(2)(A) are recoverable benefits under § 8477(e)(3)(C)(i). Mot. Dismiss, 10. The Government argues that §§ 8432(c)(1)(A) and 8432(c)(2)(A) do not confer the specific benefit that plaintiffs seek to recover in this case: contributions "no later than 12 days after the end of [the December 23, 2018 through January 5, 2019] pay period." Compl. ¶¶ 48-50. Rather, the Government contends that the timeliness requirement should be severed from the benefits. The Court disagrees.

To exercise subject matter jurisdiction over plaintiffs' claim, the Court must determine that the benefit they seek to enforce is expressly and unequivocally recoverable under the statute. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) ("waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed,'" and any such waiver must be construed strictly in favor of the sovereign); *see also United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000). Section 8432(c)(1)(A), which governs automatic

---

[4]      "Member" generally refers to a member of Congress, including the Vice President, a member of the Senate or the House of Representatives, a Delegate to the House of Representatives, and the Resident Commissioner from Puerto Rico. *See* 5 U.S.C. §§ 8401 and 2106.

contributions, provides that "*no later than 12 days after the end of the pay period . . . the employing agency shall contribute to the Thrift Savings Fund for the benefit of such employee . . . 1 percent of the basic pay of such employee . . . .*" (emphasis added). Similarly, § 8432(c)(2)(A), which governs matching contributions, provides that "the employing agency . . . shall make a contribution to the Thrift Savings Fund for the benefit of such employee . . . . *no later than 12 days after the end of each such pay period*." (emphasis added).

The Government urges the Court to separate the 12-day payment requirement from the benefits that these provisions undisputedly confer. However, this interpretation contravenes the natural reading of §§ 8432(c)(1)(A) and 8432(c)(2)(A)—with "no later than 12 days after the end of the pay period" modifying the benefit—and violates the "cardinal rule" of statutory interpretation that no provision should be rendered meaningless.[5] *Kungys v. United States*, 485 U.S. 759, 778 (1988). The Court thus concludes that plaintiffs have properly alleged subject matter jurisdiction on the ground that §§ 8432(c)(1)(A) and 8432(c)(2)(A) unambiguously provide employees benefits—automatic and matching contributions no later than 12 days after the end of the pay period—which are recoverable under the express § 8477(e)(3)(C)(i) sovereign immunity waiver.

> ii.     *Private Rights of Action Pursuant to § 8477(3)(C)(i)*

The Government next argues that plaintiffs fail to state a claim on the ground that FERSA does not confer a private right of action to recover timely contributions under §§ 8432(c)(1)(A) and 8432(c)(2)(A). To determine whether a private right of action exists,

---

[5]     As discussed in Part IV.B.ii.b, *infra*, the Government also argues that the 12-day requirement should be interpreted as an agency directive, rather than an individual right. However, this reading would render §§ 8432(c)(1)(A) and 8432(c)(2)(A) directives, rather than rights or benefits, in their entirety—a result that the Government concedes that Congress did not intend. Thus, absent any alternative use for the phrase "no later than 12 day after the end of each pay period," the Court rejects the Government's interpretation.

courts ask the following questions: "(1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy?  Only if the answer to both of these questions is 'yes' may a court hold that an implied private right of action exists under a federal statute."  *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007)(citations omitted).  With respect to §§ 8432(c)(1)(A) and 8432(c)(2)(A), the Government contends that the Court should answer "no" to both questions.

Consistent with its sovereign immunity argument, Part IV.B.i, *supra*, the Government concedes that Congress has created a private right of action through § 8477(e)(3)(C)(i), for individual enforcement of FERSA rights and benefits, in general.  However, the Government contends that §§ 8432(c)(1)(A) and 8432(c)(2)(A) do not create the personal right to timely contributions, which plaintiffs seek to enforce.  Specifically, the Government argues that "[t]hese provisions fail to create any enforceable individual right because they 'lack the sort of "rights-creating" language critical to showing the requisite congressional intent to create new rights.'"  Mot. Dismiss, 14 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002)).  Further, the Government asserts that Congress did not intend to create a personal right because "neither FERSA nor its regulations make any mention of a penalty or sanction for an employing agency's failure to make TSP contributions within 12 days."  Reply, 4.  Absent any caselaw directly on-point, the Court addresses each of these arguments as matters of first impression.

a.    Personal Right

In ruling on whether Congress intended to create a personal right, courts must determine whether there is any "rights-creating" language, which focuses on the "individual protected" rather than "the person regulated," in the applicable statutes.  *Alexander v. Sandoval*, 532 U.S. 275, 288-89 (2001).  Plaintiffs assert that the phrase, "for the benefit of the employee," contained

in §§ 8432(c)(1)(A) and 8432(c)(2)(A) constitutes "rights-creating" language. The Government contends that these subsections do not create personal rights on the ground that "each of these provisions is 'phrased as a directive to federal agencies engaged in the distribution of public funds.'" Mot. Dismiss., 15 (citations omitted). However, in making this argument, the Government again relies on an unnatural reading of the relevant provisions, which separates the timeliness requirement from the personal right, and requires, in the case of § 8432(c)(1)(A), bifurcation of a single sentence. The Government at once concedes that the statutory language is sufficient to confer personal rights to automatic and matching contributions, but argues that the same language is insufficient to create a personal right to such contributions "no later than 12 days after the end of such pay period." The Court is unpersuaded by this interpretation.

However, even assuming *arguendo* that the 12-day requirement constitutes an agency directive, this characterization would not defeat plaintiffs' claim. "Language that directs state officials in the implementation of statutory objectives may still create an enforceable right where it 'mentions a specific, discrete beneficiary group within the statutory text' and 'speaks in individualistic terms, rather than at the aggregate level of institutional policy or practice.'" *Colon-Marrero v. Velez*, 813 F.3d 1, 17 (1st Cir. 2016); *see also Gonzaga Univ.*, 536 U.S. at 284 (statutes phrased "with an unmistakable focus on the benefited class" create individual rights). As stated in its title, FERSA was enacted for the benefit of a specific group: federal employees. The first line of § 8432, which states, "An employee or Member may contribute to the Thrift Savings Fund in any pay period . . . ," unmistakably focuses the Section on this class of beneficiaries from the outset. 5 U.S.C. § 8432(a)(1). Subsections (c)(1)(A) and (c)(2)(A) reiterate this focus several times, supporting plaintiffs' claim that FERSA, and these subsections were intended to benefit the discrete class of which they are a part.

Given the focus of §§ 8432(c)(1)(A) and 8432(c)(2)(A) and the rights-creating language in both provisions, the Court determines that plaintiffs have properly alleged the existence of a personal right to automatic and matching contributions within 12 days of the end of a pay period.

b.   Private Remedy

The Government next argues that plaintiffs fail to allege a private right of action on the ground that "neither FERSA nor its regulations make any mention of a penalty or sanction for an employing agency's failure to make TSP contributions within 12 days." Reply, 4. Without an express penalty for noncompliance, the Government argues that plaintiffs "cannot demonstrate that Congress meant to create a private right of action whenever a government agency failed to meet the deadline." *Id.* Plaintiffs claim, however, that the remedy provided by § 8477(e)(3)(C)(i) for the enforcement of rights and recovery of benefits encompasses the enforcement of the §§ 8432(c)(1)(A) and 8432(c)(2)(A) deadlines. Opp. Mot. Dismiss, 11. On the present state of the record,[6] the Court agrees with plaintiffs on this issue.

"Determining whether a statute explicitly provides a private remedy involves a relatively straightforward inquiry. A court must look to the text of the statute to see if it states, by its terms, that a private party may bring suit to enforce it." *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 420 (3d Cir. 2004) (citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 25 (1989)). As discussed in Part IV.B.i, *supra*, the Government does not dispute that § 8477(e)(3)(C)(i) allows federal employees to sue to recover benefits and enforce rights provided under subchapter III of FERSA. Thus, the narrow issue presented by the

---

[6]      Although the Government cites multiple sources of authority in support of its private remedy argument, the undeveloped record makes application of that authority difficult. Few of the cases cited were decided at the motion to dismiss phase, or on a comparably sparse record. As "analysis of the law must attend development of the facts," the Court entertains the Government's novel arguments with caution. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997), as amended (May 15, 1997) (reversing the trial court's grant of defendant's motion to dismiss based on a novel question of law).

Government's Motion with respect to whether § 8477(e)(3)(C)(i) creates a private remedy is identical to the Government's argument with respect to the personal rights created by §§ 8432(c)(1)(A) and 8432(c)(2)(A): whether the 12-day requirement is incorporated in those rights.

The Court has already resolved the issue of personal rights in favor of the plaintiffs, and it resolves the private remedies question in the same way.  At this stage in the litigation, the Court declines to separate the 12-day requirement of §§ 8432(c)(1)(A) and 8432(c)(2)(A) from the substantive rights created by those provisions in order to effectuate the Government's interpretation.  The Court thus concludes that plaintiffs have sufficiently alleged that § 8477(e)(3)(C)(i) provides a private remedy to enforce the personal rights provided by §§ 8432(c)(1)(A) and 8432(c)(2)(A) in their entirety.

### iii.    Applicability of § 8432a

The Government further contends that plaintiffs fail to state a claim for relief on the ground that the FBI complied with 5 U.S.C. § 8432a and its implementing regulations, which govern the repayment of lost earnings due to agency errors.  Section 8432a(a)(1) instructs the Executive Director to "prescribe regulations under which an employing agency shall be required to pay to the Thrift Savings Fund amounts representing lost earnings resulting from errors (including errors of omission) made by such agency in carrying out this subchapter."  One of those regulations, 5 C.F.R. § 1605.11(c), provides employing agencies a 30-day grace period within which to post automatic and matching contributions that were delayed by agency error.

Plaintiffs do not dispute that only 20 days passed between the date upon which they expected to receive their first contributions, January 11, 2019, and when they received them, on January 31, 2019.  Compl. ¶ 42.  However, they assert that § 8432a does not apply to their claim

on the ground that it provides only for repayment of lost earnings caused by agency "errors."

5 C.F.R. § 1605.1 defines "error" as

> Any act or omission by . . . the participant's employing agency that is not in accordance with applicable statutes, regulations, or administrative procedures . . . . It does not mean an act or omission caused by events that are beyond the control of the Board, the TSP Record Keeper, or the participant's employing agency.

Plaintiffs state that that the cause of their lost earnings, the Shutdown, was an event beyond the control of their employing agency, not an "error."  Accordingly, plaintiffs allege that the Government's compliance with § 8432a does not preclude their claim.  The Court agrees with plaintiffs.

The Government recognizes that plaintiffs' losses were not caused by agency error.  Mot. Dismiss, 13.  However, it maintains that plaintiffs' claim is governed by § 8432a and its accompanying regulations on the ground that the regulations provide an exhaustive set of circumstances under which TSP participants may bring claims for lost earnings.  Reply, 9 ("FERSA's implementing regulations, therefore, specify the situations in which 'lost earnings' may be paid to TSP participants, and under what terms and exceptions.").  The Government does not cite, and the Court has not identified, any authority to support this contention.  Further, the Government does not state that FERSA's allegedly exhaustive regulations provide an alternative remedy for lost earnings caused by events outside the control of the agency.  Thus, absent evidence to the contrary, plaintiffs' claim that their remedy is provided under § 8477(e)(3)(C)(i), not § 8432a or its regulations, is sufficient to survive the Government's Motion to Dismiss.

   iv. *The Anti-Deficiency Act*

The Government's final 12(b)(6) argument seeks dismissal of plaintiffs' claim on the ground that plaintiffs have failed to allege that they were entitled to TSP contributions during the

Shutdown "despite the lack of authorized appropriations to fund them."  Mot. Dismiss, 15.

Given that agencies' contributions to their employees' TSP accounts originate as appropriated

funds, the Government contends that "any attempt by the FBI to pay its employees or to

contribute to its employees' TSP accounts during the [Shutdown] would have violated the Anti-

Deficiency Act [(ADA)]."  *Id.*, 16.  Pursuant to the ADA, "an officer or employee" of the federal

government "may not . . . make or authorize an expenditure or obligation exceeding an amount

available in an appropriation or fund for the expenditure or obligation."  31 U.S.C.

§ 1341(a)(1)(A).  In response to the Shutdown, Congress amended the ADA through the

Government Employees Fair Treatment Act of 2019 (GEFTA), Pub. L. No. 116-1, 133 Stat. 3

(2019), which states, *inter alia*:

> [E]ach excepted employee who is required to perform work during a covered lapse
> in appropriations shall be paid for such work, at the employee's standard rate of
> pay, at the earliest date possible after the lapse in appropriations ends, regardless of
> scheduled pay dates, and subject to the enactment of appropriations Acts ending the
> lapse.

31 U.S.C. § 1341(c)(2).

Plaintiffs do not dispute that the Government complied with the ADA when it distributed

their paychecks and TSP contributions on January 31, 2019.  Compl. ¶¶ 36, 40.  Notwithstanding

this compliance, however, they allege that the Government violated FERSA by failing to

compensate them for increases in TSP funds that occurred during the Shutdown—an obligation

that, they claim, is independent of ADA authorization.  *Id*. ¶¶ 41-42; Opp. Mot. Dismiss, 13.

Plaintiffs' assertion that the lapse in appropriations did not extinguish their right to TSP

contributions is supported by the caselaw.  As numerous courts have recognized, an

appropriation "merely imposes limitations upon the Government's own agents; . . . but its

insufficiency does not pay the Government's debts, nor cancel its obligations, nor defeat the

rights of other parties." *Martin v. United States*, 130 Fed. Cl. 578, 583 (2017) (quoting *Ferris v. United States*, 27 Ct. Cl. 542, 546 (1892)); *see also Lovett v. United States*, 104 Ct. Cl. 557, 582 (1945) ("[i]n a long line of cases it has been held that lapse of appropriation, failure of appropriation, exhaustion of appropriation, do not of themselves preclude recovery for compensation otherwise due").

Nevertheless, the Government argues there is an inconsistency between plaintiffs' claim—that they were entitled to backpay in the full amount of their owed salary, plus TSP earnings that would have accrued had the Government made contributions "no later than 12 days after the end of the pay period"—and GEFTA's direction that agencies distribute such backpay "at the earliest date possible."   The Court finds no such inconsistency.

By asserting that "whether FERSA obligates the government to make TSP contributions differs significantly from their timing," the Government repeats arguments previously made in its Motion and rejected in this Memorandum.  Mot. Dismiss, 6 (emphasis omitted).  The Court has already determined that plaintiffs have adequately alleged that their right to TSP contributions under §§ 8432(c)(1)(A) and 8432(c)(2)(A) includes the 12-day payment requirement.  The Court also concludes that plaintiffs sufficiently aver that the Government's obligation to compensate employees for missed contributions due to a lapse in appropriations includes a duty to remedy its failure to make those contributions "no later than 12 days after the end of the pay period."  Thus, plaintiffs' claim for lost earnings is not defeated, as a matter of law, by the ADA's prohibition on salary payments and TSP contributions during a lapse in appropriations.

v. *Exhaustion Requirement*

Finally, the Government contends that the Court "must dismiss the Complaint because it fails to allege that [p]laintiffs exhausted their mandatory administrative remedies before filing suit." Mot. Dismiss, 16.  This argument is easily rejected on the ground that plaintiffs have sufficiently alleged that their lost earnings were not caused by agency "error."  *See* Part IV.B.iii, *supra*.  In asserting that "TSP participants are required . . . to seek correction of agency errors vis-à-vis TSP benefits from their employing agency before bringing claims in district court," the Government relies on 5 C.F.R. § 1605.16—"Claims for Correction of Employing Agency Errors; Time Limitations"—which, as stated in its title, sets forth administrative procedures for the correction of agency errors.  Mot. Dismiss, 17.  In response, plaintiffs repeat their allegation that their lost earnings did not result from agency error and therefore, the exhaustion requirement provided by § 1605.16(d)(4) does not apply.

The Court determines that the § 1605.16 procedures apply only to the correction of agency errors, and that plaintiffs have properly alleged that they were not bound by the exhaustion requirement.  Accordingly, that part of the Government's Motion seeking dismissal of plaintiffs' claim for failure to exhaust administrative remedies is denied.

## V. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss is denied.  Plaintiffs' Motion to Proceed Anonymously is granted without prejudice to the right of the parties to seek modification of the order at a later stage of the proceedings.  An appropriate order follows.